FILED
United States Court of Appeals
Tenth Circuit

November 25, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

HAO SUN,

     Defendant-Appellant.

No. 09-8002
(D.Ct. No. 2:07-CR-00262-CAB-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **BRORBY,** and **MURPHY**, Circuit Judges.

_____

A jury convicted Appellant Hao Sun of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(A), and he received a sentence of "time served plus three days," after which he was to be deported. On appeal, Mr. Sun contends the district court erred in denying his motion to admit hearsay testimony pursuant to Federal Rules of Evidence 804(a)(5), 804(b)(3), and 807. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the district court's denial of admission of Mr. Sun's hearsay evidence and affirm his conviction.

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Factual and Procedural Background

On June 18, 2007, United States Park Rangers Eric Amundson and Shane Lawson investigated a claim by Edward Houston, a government employee living at the Bitterroot Dormitory located in Yellowstone National Park, Wyoming.[1]  Mr.

---

[1]  In both appeal briefs, the parties provide lengthy statements of fact without any reference or citation to the evidence provided at trial or the record on appeal.  Instead, they rely exclusively on the "Prosecutors Statement" filed with the district court and provided to this court through an attachment to the government's brief.  It appears the information contained in the Prosecutor's Statement was garnered from evidence provided at Mr. Sun's five-day trial and is contained in the 724-page trial and hearing transcript provided on appeal.  We note both the Federal Rules of Appellate Procedure and our Tenth Circuit Rules require the parties to cite to evidence in the record in support of their positions. *See generally* Fed. R. App. P. 28(a)(9)(A), 28(e), 30(c)(2); 10th Cir. R. 28.1(A), (B).  However, because both parties rely on the Prosecutor's Statement as accurately representing the evidence presented at trial, we, too, rely primarily on that statement, declining to sift through the entirety of the lengthy transcript submitted in the record on appeal, which is the responsibility of the parties in providing record cites. *See Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005) (holding that, generally, in the absence of references to the record in a party's brief, this court will "not sift through the record to find support for" the arguments made).

In addition, neither party consistently provides citations to other parts of the record on which they rely or those portions of the opposing party's brief to which they refer in making their arguments.  Again, we kindly remind counsel to follow our rules of appellate procedure, which include proper citation to the record and appellate documents on which they rely. *See* Fed. R. App. P. 28(a)(9)(A), 28(e); 10th Cir. R. 28.1(A) and(B); 28.2(B).

Unlike counsel, we are not familiar with the record provided to us on appeal.  While none of these appellate "indiscretions" are dispositive to this appeal, adherence to the Federal Rules of Appellate Procedure is intended to assist us in best considering arguments on appeal and disposing of issues and cases with judicial economy, rather than causing us to sift through an inordinately large record, as provided here, containing multiple volumes of pleadings,

(continued...)

Houston told them he found pornographic images of children on the computer he borrowed from his roommate, Mr. Sun, a Chinese citizen and Hong Kong university student who entered the country on June 4, 2007, and was employed at Yellowstone National Park for the summer. Mr. Houston advised them the Toshiba Portege laptop in his possession, and belonging to Mr. Sun, contained images of young children photographed partially nude and committing sexual acts. He then located and displayed for the rangers approximately twenty-five to thirty images of young females, both partially and fully nude, on Mr. Sun's computer, including two images depicting one young girl approximately four- to six-years-old, with fully-exposed genitalia and another young girl approximately six- to eight-years-old involved in an oral sexual act. Mr. Houston then informed the rangers he believed the computer contained approximately 300 images on the hard drive and explained he found the images by clicking on an icon on the monitor.

The rangers then proceeded to Mr. Sun's dorm room to conduct a field interview with him. When Mr. Sun greeted the rangers at his door, he immediately stated he was "not into children." After receiving advisement of his *Miranda* rights and stating he understood them, Mr. Sun agreed to answer questions. At that time, he admitted the computer in question belonged to him but

[1](...continued)
transcripts, and exhibits, in order to find that portion of the record which supports the parties' contentions.

denied ownership of the nude images of children. Instead, he stated he first noticed the nude images on his computer at the end of May or in early June, but he had "forgotten to delete them and didn't know why." When asked how he stored the computer, he explained it sat out in his dormitory room and his door was "always unlocked." He then stated that "someone else" must have downloaded the material onto his computer.

During his interview, Mr. Sun became more nervous and concerned about possible charges being filed against him. He then asked if possessing pornography was illegal in the United States. When he was told it generally was not, but that possessing child pornography was illegal, he acted surprised and asked if the rangers were referring to child pornography found on his computer. When they verified they were, Mr. Sun again acted surprised and stated all of the pornography he viewed on his computer was "legal product" and that while he had downloaded nude adult images and videos from various web-sites, he could not recall how many or their names. The rangers left, informing Mr. Sun he would, most likely, be contacted again concerning their investigation. His computer was seized at that time.

Thereafter, the government obtained a federal search warrant for Mr. Sun's computer and sent it to a forensics examiner, Special Agent Beth Shott, who

conducted an examination of the computer. Ms. Shott later testified at Mr. Sun's trial. According to her findings, one-half of the images on his computer contained pornography and one-quarter of those images contained child pornography, which included approximately 800 sexually-explicit images of children in various positions, including lascivious and graphic displays of genitals and adult/child sexual conduct. These images, as well as the adult pornography images, were contained in a single folder called "downloads," and the child pornography images appeared in a sub-folder named "UU," which in Chinese means "young young"; included in the "UU" sub-folder were nine sub-files containing the 800 child pornography images. Ms. Shott found most of the folders and sub-folders or sub-files on Mr. Sun's computer were in English, including the child pornography sub-files.

Ms. Shott's investigation revealed someone placed both the child and adult pornography images on the computer on May 26, 2007, prior to Mr. Sun's arrival in the United States on June 4, 2007. However, at least twenty of the sexually-explicit images of children had file access dates in June 2007, including June 5, 9, 10, and 14, indicating someone viewed them during Mr. Sun's employment at Yellowstone National Park. Many of these access dates corresponded with the same day someone accessed Mr. Sun's school, family, and other photograph folders and conducted internet surfing to various web-sites, including sites for

Mr. Sun's college and bank. In determining the access dates, Ms. Shott omitted from consideration the dates Mr. Houston and the rangers accessed the computer and the images viewed.

In addition to the images and folders described, Ms. Shott also recovered a picture-viewing program on Mr. Sun's computer which contained 2,000 indecent images of children and which was placed on his computer on June 4, 2007. She also determined that on June 3, 2007, someone used Mr. Sun's computer to view sex sites and downloaded the images onto the computer, including at least one image of child pornography. The only history Ms. Shott was able to recover from the computer was from May 20 to June 18, 2007; she stated this and the massive downloading of numerous amounts of school and family photos in late May, as well as other materials, including the adult and child pornography, were consistent with someone reloading their computer after damage and repair. She also stated someone catalogued the location of the child pornography material in the same manner as all of the other folders, including those of Mr. Sun's family photographs and adult pornography. In her opinion, this, and the fact that someone added to those files while the computer was in the United States, indicated Mr. Sun knew of the existence of the child pornography on his computer.

Prior to trial, Mr. Sun filed a motion to admit hearsay statements of his cousin and father for the purpose of showing his cousin possessed his computer and placed the child pornography images on his computer. He also attached a written statement from his cousin, Sun Liutao, who lives in China. In his statement, his cousin admitted he downloaded "porn pictures" onto Mr. Sun's computer, but stated he was taking "the Fifth Amendment defense on the issue as to whether [he] downloaded or review[ed] any child porn pictures."[2] Sun Liutao also stated he would "fully cooperate to testify truly on my recollections of what happened to the best of my knowledge, though I will not get myself involved in this case to avoid legal liabilities."

Before ruling on Mr. Sun's motion to admit hearsay evidence, the district court ordered Mr. Sun to take depositions of Mr. Sun's father, mother, and cousin, who all live in China, advising "I think you have to prove that the [cousin] ... refuses to cooperate, refuses to admit guilt or to testify" and "if we have those matters before us, I'm going to grant the defendant's motion to admit the hearsay

---

[2] The English translation of the statement says he "copied some porn pictures," while the Chinese version of his statement, as interpreted by a translator, says he "put some pornographic pictures" on the computer, both of which are general admissions without specific reference to child pornography. In addition, during oral argument, counsel for both parties indicated Sun Liutao said in his statement he placed "adult entertainment" on Mr. Sun's computer; however, the record, including his statement and deposition, shows he only admitted to "porn" or "pornographic pictures," and did not use the words "adult entertainment."

as a matter of justice." As a result, the parties conducted video depositions of the three individuals. However, during Sun Liutao's video conference, he simply agreed he wrote the statement attached to Mr. Sun's motion and read at the deposition and also attested to the truth of that statement, but he refused to answer any further questions or subject himself to cross-examination regarding his use of the computer and any pornography on it. Through an interpreter, however, he did explain he did not write, speak, or understand any English.

Prior to trial, the district court took the matter of the hearsay admissions under advisement pending its review of the depositions. At trial, during a conference with counsel, the district court ruled on the matter, agreeing with the government that Sun Liutao did not admit, either in his statement or deposition, to placing "child" pornography on the computer, so both his statement and deposition failed to met the hearsay exception under Federal Rule of Evidence 804(b)(3) as a statement against penal interest, which also requires a sufficient guarantee of trustworthiness, as corroborated by other reliable evidence.

The district court also rejected Mr. Sun's argument his parents' video conference testimony corroborated Sun Liutao's testimony. Instead, it agreed with the government that his parents' testimony that Sun Liutao admitted downloading child pornography was hearsay and did not meet a hearsay exception

because it did not possess equivalent circumstantial guarantees of trustworthiness under Federal Rule of Evidence 807 (formerly Rule 803(24)). It made this decision based on the fact Mr. Sun's parents are not citizens subject to the jurisdiction of the district court and had a family bias in testifying for the purpose of exonerating their son. In so ruling, it also rejected Mr. Sun's argument that all three witnesses' testimony should be admitted as an exception to hearsay evidence under Federal Rule of Evidence 807 because their statements were more probative on the point for which they were offered than any other evidence which he could procure through reasonable efforts and that the interests of justice would best be served by their admission into evidence.

While the district court ordered their hearsay statements be redacted, it allowed the jury to hear the remainder of Sun Liutao's and Mr. Sun's father's depositions. Those unredacted portions clearly indicated other people accessed the computer before Mr. Sun took it to the United States, including his cousin, Sun Liutao, who stated in his deposition, "I personally have used this computer" but would not state when he used the computer. Mr. Sun's father also testified that he and his wife used the computer and that he loaned the computer to Sun Liutao for four or five days in May 2007 after the computer had been repaired at a

shop.[3]

In addition to this information, Mr. Sun testified on his own behalf, stating: (1) his college roommates, as well as other students, used his computer while he was at college in Hong Kong, and most of the time they used it out of his presence; (2) the computer hard drive was damaged in May 2007, causing him to lose the information on it; (3) on May 10, 2007, he took the computer to a repair shop which replaced the hard drive; (4) he obtained the computer from his parents around May 29, 2007, prior to his departure for the United States on June 4; (5) between May 29 and June 4, other students at his college had access to the computer; (6) he brought the computer with him to the United States, but checked it with his luggage and did not see it again until he arrived in Bozeman, Montana, on June 4; (7) on the night of his arrival in the United States he allowed other Chinese students to use his computer for the purpose of contacting their families; (8) he did not use or require a password for access to his computer; and (9) he left his computer in his Yellowstone dormitory room all day on June 9, 2007 – his first day off from work. He also testified that, after his arrest, he learned his cousin had borrowed the computer from his parents.

---

[3] After the court required redaction of the hearsay statements in Mr. Sun's mother's deposition, Mr. Sun's counsel decided not to offer the unredacted portion of her testimony to the jury.

Although Mr. Sun testified he lost all the information on his hard drive when his computer crashed, he acknowledged it contained photographs of family and friends, as well as photographs of Yellowstone, in separate folders which he explained must have been placed on his computer by family and friends. He also denied setting up the folder tree containing those file folders. While Mr. Sun admitted he accessed adult web-sites while he was in China and the United States, he denied saving any pornographic photos of adults or children, including those found on his computer, but he also stated he did not delete any site histories on his computer pertaining to adult web-sites accessed. According to Mr. Sun, he did not know child pornography existed on his computer until his interview with the rangers on June 18, 2007.

At the conclusion of his trial, the jury convicted Mr. Sun of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A). A federal probation officer prepared a presentence report in conjunction with the 2007 United States Sentencing Guidelines, which resulted in a recommended, advisory guideline range of eighty-seven to 108 months imprisonment. However, the district court granted Mr. Sun a requested variance based, in part, on his personal history and characteristics, and sentenced him to "time served plus three days," after which he was to be deported. At that time, Mr. Sun had been incarcerated for seventeen months.

## II.  Discussion

On appeal, Mr. Sun argues the district court erred in not allowing into evidence the statement and deposition testimony of his cousin, Sun Liutao, because he was unavailable for the trial and his statements constituted exceptions to hearsay under Federal Rules of Evidence 804(a)(5), 804(b)(3), and 807. Specifically, he contends:  (1) it was impossible to procure his cousin's attendance at trial so his statements are admissible under Rule 804(a)(5); (2) his cousin's statements were against his own penal or pecuniary interest, so they are admissible under Rule 804(b)(3); and (3) his cousin's statements constituted a material fact more probative on the point for which offered than any other evidence he could procure through reasonable efforts, and their admission would best serve the interests of justice under Rule 807.[4]  In support of each contention, Mr. Sun summarily claims the district court violated his due process rights "guaranteed by the 10th Amendment to the U.S. Constitution," which we assume he intended to mean a violation of his Fifth Amendment right to due process.  He

---

[4]  In providing the legal standard for our review, Mr. Sun simply states that "[q]uestions of fact are reviewed for clear error" and does not cite to any legal authority in support thereof.  We remind counsel an appellant's brief is to contain, "for each issue, a concise statement of the applicable standard of review," together with citations to the authorities on which the appellant relied.  Fed. R. App. P. 28(a)(9)(A) and (B).  Similarly, Mr. Sun's appellate brief does not follow the required form for briefs.  We remind counsel, for example, that the text of a brief is to be double-spaced with no more than ten and one-half characters of typeface per inch.  *See* Fed. R. App. P. 32(a)(4), (a)(5)(B).

also suggests he was prejudiced by the district court when it definitively ruled, in the preliminary hearing on his motion, it would admit Sun Liutao's testimony, which he relied on when he spent resources to take the deposition of Sun Liutao and prepared for trial. In response, the government argues in support of the district court's denial of Sun Liutao's hearsay admissions and also points out Mr. Sun raises his due process claims for the first time on appeal.

A. Standards of Review

As the government contends, Mr. Sun did not raise his Fifth Amendment constitutional due process objections at trial, instead relying entirely on the Federal Rules of Evidence. Due process claims raised for the first time on appeal are reviewed for plain error. *See United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir.), *cert. denied,* 130 S. Ct. 263 (2009). However, because Mr. Sun's brief on appeal fails to address the plain error standard, he has waived his constitutional arguments. *See id.* But, even if we ignore his waiver of this issue, Mr. Sun's constitutional claims fail, as do his claims regarding the applicable Federal Rules of Evidence, for the reasons discussed hereafter.

To begin, we have said that "an evidentiary ruling infringes a defendant's due process rights only if the district court violates the Federal Rules of Evidence." *Id.* "[A] district court violates the Rules of Evidence only if it abuses

-13-

its broad discretion – i.e., only if its ruling is based on a clearly erroneous finding of fact or an erroneous conclusion of law or the ruling manifests a clear error in judgment." *Id.* (quotation marks and citations omitted). We have long held "[t]he need for deference to a trial court ruling on a hearsay objection is particularly great because the determination of whether certain evidence is hearsay rests heavily upon the facts of a particular case." *United States v. Porter*, 881 F.2d 878, 882 (10th Cir. 1989) (quotation marks and citation omitted). Similarly, the determination of trustworthiness in regards to "corroborating evidence lies within the sound discretion of the trial court, which is aptly situated to weigh the reliability of the circumstances surrounding the declaration." *Id.* at 883. Finally, "the party offering the [hearsay] evidence bears a heavy burden of presenting the trial court with sufficient indicia of trustworthiness to trigger application of Federal Rule of Evidence [807]." *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998).

As to Mr. Sun's newly-raised Fifth Amendment due process claim, to which we apply plain error review, he must show a constitutional error that was obvious and affected substantial rights, *see United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005), by "seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). To establish a due process violation, the defendant must

show he was denied "fundamental fairness," or, in other words, "the excluded evidence might have affected the outcome of [his] trial." *Oldbear*, 568 F.3d at 820. The plain error doctrine is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Oberle*, 136 F.3d 1414, 1422 (10th Cir. 1998) (quotation marks and citations omitted).

### B. Federal Rules of Evidence 804(a)(5), 804(b)(3), and 807

Having set forth our standards of review, we turn to the implicated Federal Rules of Evidence dealing with hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Generally, hearsay evidence is "not admissible except as provided by [the Federal Rules of Evidence]." Fed. R. Evid. 802. As Mr. Sun suggests, under the Federal Rules of Evidence, a witness must be unavailable for the purpose of permitting his declaration into evidence, and a witness is unavailable when, for instance, he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... [or] by process or other reasonable means." Fed. R. Evid. 804(a)(5). However, as the government contends, this is not enough to permit the declarant's hearsay statements or testimony into evidence. Instead, a defendant, like Mr. Sun, who is seeking admission of hearsay evidence under

Federal Rule of Evidence 804(b)(3) "must show (1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement." *United States v. Spring*, 80 F.3d 1450, 1460-61 (10th Cir. 1996) (quotation marks and citation omitted).

While Rule 804(b)(3) requires trustworthiness in admitting hearsay statements against penal interest, Rule 807 also provides a hearsay exception based on trustworthiness, stating, in relevant part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807. "The first requirement for admissibility under Rule [807] is that the statement have circumstantial guarantees of trustworthiness equivalent to the twenty-three specific hearsay exceptions enumerated in Rule 803." *United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995). In other words, this is a conjunctive requirement that must be met in order to apply the hearsay exception in Rule 807, even if the other requirements in Rule 807 are met. In addition, we have said Rule 807 should rarely be used, and only in exceptional circumstances, because to do otherwise would allow the exception to swallow the hearsay rule.

*Id.*

Even if a statement qualifies as an exception to hearsay, it may violate the Sixth Amendment Confrontation Clause if the statement constitutes "testimonial hearsay" and no "prior opportunity for cross-examination" occurred. *Crawford v. Washington*, 541 U.S. 36, 53-54, 68 (2004); *see also United States v. Pursley*, 577 F.3d 1204, 1223 (10th Cir. 2009); *Solomon*, 399 F.3d at 1237. The purpose of such cross-examination is to assess the reliability of the statement made. *See Crawford*, 541 U.S. at 61. We have said "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Pursley*, 577 F.3d at 1223.

In this case, Sun Liutao's prior written statement he placed "porn" or "pornographic pictures" on Mr. Sun's computer was essentially incorporated into his deposition testimony when that statement was read during his deposition and he admitted to the truth of that statement. For the purposes of this case only, we assume, without deciding, his deposition incorporating that statement constitutes testimonial hearsay and that the government had a "prior opportunity for cross-examination" of Sun Liutao's statements for the purpose of meeting the Confrontation Clause requirement, regardless of the fact he failed to answer many

-17-

of the questions posed to him during that cross-examination. In addition, the government concedes Sun Liutao was unavailable to testify at trial. With these assumptions established, we are left to decide only whether, under Federal Rule of Evidence 804(b)(3), Sun Liutao made a statement against penal interest and sufficient corroboration indicates the trustworthiness of his statements for the purpose of determining whether they are admissible hearsay. *See Spring*, 80 F.3d at 1460-61.

To begin, it is highly debatable whether Sun Liutao made a statement against penal interest. We have said a statement against penal interest must not only tend to incriminate the declarant, but must also exculpate the accused. *See United States v. Perez*, 963 F.2d 314, 316 (10th Cir. 1992). In this instance, Sun Liutao's ambiguous admission he placed "porn" or "pornographic pictures" on Mr. Sun's computer, without an admission he placed illegal "child" pornography on it, does not necessarily implicate him in the crime at issue and for which he could be prosecuted. His failure to admit to placing the illegal child pornography on the computer also does not exculpate Mr. Sun. We have said in such instances that "[t]o the extent that a statement is not against the declarant's interest, the guaranty of trustworthiness does not exist and that portion of the statement should be excluded." *Porter*, 881 F.2d at 882-83 (emphasis, quotation marks, and citation omitted). We also agree with the government that Sun Liutao's

-18-

statements, including his written statement incorporated into his deposition testimony, lack reliability or trustworthiness because he refused to answer cross-examination questions regarding the images he placed on Mr. Sun's computer. As previously noted, the purpose of such cross-examination is to assess the reliability of the statement made, *see Crawford*, 541 U.S. at 61, which logically goes to "the trustworthiness of the statement" made under Rule 804(b)(3).

In addition, Mr. Sun's father's testimony does not corroborate Sun Liutao's testimony for the purpose of indicating the trustworthiness of his statement, as required under Rule 804(b)(3). While Mr. Sun's father testified Sun Liutao told him he placed child pornography on his son's computer, Sun Liutao did not admit, either in his statement or deposition, to placing "child" pornography on the computer, so, arguably, no corroboration exists on that point. Moreover, the district court found Mr. Sun's father's testimony lacked equivalent circumstantial guarantees of trustworthiness required under Federal Rule of Procedure 807. As previously discussed, the determination of trustworthiness regarding corroborating evidence lies within the sound discretion of the district court, *Porter*, 881 F.2d at 882, and Mr. Sun bears a heavy burden of presenting hearsay evidence with a sufficient indicia of trustworthiness under Rule 807. *See Trujillo*, 136 F.3d at 1396. Here, the district court agreed with the government Mr. Sun's father was not a citizen subject to its jurisdiction and his statements were

unreliable, given his apparent motive in attempting to exonerate his son, which may have led to fabrication in order to protect his son. As a result, we cannot say the district court abused its discretion in determining Sun Liutao's statements did not meet the hearsay exception under Federal Rule of Evidence 804(b)(3).

For the same reasons that Sun Liutao's statements lack sufficient trustworthiness under Rule 804(b)(3), they also lack trustworthiness under Federal Rule of Evidence 807. As previously addressed, "[t]he first requirement for admissibility under Rule [807] is that the statement have circumstantial guarantees of trustworthiness ...." *Tome*, 61 F.3d at 1452. Without such trustworthiness, his statements are inadmissible, regardless of whether the other Rule 807 criteria apply. For the reasons previously cited, the district court did not abuse its discretion in denying the admission of Sun Liutao's statements under Rule 807. While the district court may have earlier indicated it would consider admission of Sun Liutao's testimony under certain circumstances, it is apparent it did not make its final ruling until after the testimony was taken and another hearing held on the issue when it reviewed his deposition and determined his testimony lacked the requisite trustworthiness for admission under either Rule 804(b)(3) or Rule 807

C. Due Process Plain Error

Having determined the district court did not abuse its discretion in its denial of the admission of Sun Liutao's statements under the Federal Rules of Evidence, we also determine no plain error occurred with respect to Mr. Sun's newly-raised Fifth Amendment due process claim. As previously discussed, "an evidentiary ruling infringes a defendant's due process rights only if the district court violates the Federal Rules of Evidence," *see Oldbear*, 568 F.3d at 820, which did not occur here. However, even if we gave Mr. Sun the benefit of the doubt and somehow concluded the district court committed an obvious constitutional error, the error clearly did not affect the outcome of his trial.

First, Mr. Sun's cousin, Sun Liutao, never admitted to placing "child" pornography on the computer, so the exculpatory value of his statements is highly questionable, as it is apparent those statements did not exonerate Mr. Sun. In addition, regardless of whether Sun Liutao loaded the child pornography onto Mr. Sun's computer, Mr. Sun *possessed* the child pornography, which he initially admitted to rangers he knew was on his computer and had accessed and viewed but had not deleted. Such possession is sufficient for conviction under 18 U.S.C. § 2252A(a)(5)(A), which applies to anyone who "knowingly possesses, or knowingly accesses with intent to view, ... material that contains an image of child pornography ...."

The rangers' testimony as to Mr. Sun's admission to knowingly possessing the child pornography is corroborated by the forensic expert's findings that: (1) Mr. Sun's computer contained an overwhelming number of 800 explicit images of child pornography; (2) at least twenty of the sexually-explicit images of children had file access dates in June 2007, indicating someone viewed them during Mr. Sun's employment at Yellowstone National Park; and (3) these access dates corresponded with dates when someone accessed Mr. Sun's school and family photograph folders and conducted internet surfing to various web-sites, including those of Mr. Sun's college and bank. Based on this information, a jury could reasonably conclude, as did the expert, that Mr. Sun, as the owner/possessor of the computer, would no doubt be aware of at least some of the 800 images on his computer and was most likely the person viewing the child pornography during the time in question when photographs of his family and web-sites for his school and bank were also viewed. Thus, in convicting Mr. Sun of possession of child pornography, it is apparent the jury credited the rangers' and the forensic expert's testimony and soundly rejected Mr. Sun's contentions at trial he was unaware the child pornography was on his computer until the rangers informed him of it.[5]

_____

[5] In addressing whether the exclusion of the hearsay evidence violated Mr. Sun's constitutional due process rights, we review the sufficiency of the evidence to support his conviction, and, in so doing, "[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury," but determine only "whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences

(continued...)

Similarly, Mr. Sun's claim his cousin's hearsay testimony would have exonerated him is countered by evidence showing: (1) the child pornography folders were catalogued in the same manner as the other folders and sub-folders or sub-files on Mr. Sun's computer; (2) most of the folders, including the child pornography, were in English, which he spoke but his cousin did not; and (3) on the day before and the day of his arrival in the United States, when his cousin did not have access to his computer, someone placed a picture-viewing program on Mr. Sun's computer containing 2,000 indecent images of children and used his computer to view sex sites and download images onto the computer, including at least one image of child pornography.

In addition, even though Mr. Sun suggests his cousin's statements were critical to his defense because they would have shown someone else placed the child pornography on his computer, his own testimony, as well as the unredacted portions of Sun Liutao's and Mr. Sun's father's testimony submitted to the jury, clearly indicated that others besides Mr. Sun had access to the computer and an opportunity to place child pornography on it before he took it to the United States, including Sun Liutao, Mr. Sun's parents, the repair shop, and various other individuals such as his friends and college acquaintances. However, as previously

---

[5](...continued)
to be drawn therefrom." *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007).

discussed, the fact someone else placed the child pornography on Mr. Sun's computer did not affect the outcome of the jury's verdict, given the dispositive issue was whether he knowingly possessed such pornography, in violation of 18 U.S.C. § 2252A(a)(5)(A), regardless of who may have placed it on his computer. As a result, it is apparent no plain error occurred affecting Mr. Sun's Fifth Amendment due process rights.

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Mr. Sun's hearsay evidence and **AFFIRM** his conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge