# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60926

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JAMES WILLIAM SMITH,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

This case reaches our court for the second time. In the prior appeal, another panel of this court reversed the district court's judgment of acquittal at the conclusion of James William Smith's trial. Our court held that the evidence was legally sufficient to support the jury's guilty verdict.[1] On remand, the district court entered a final judgment of conviction and sentenced Smith for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Smith appeals that conviction, asserting, *inter alia*, that the prosecutor plainly erred by personally vouching for the credibility of witnesses and invoking the

---

[1] *United States v. Smith*, 739 F.3d 843, 848 (5th Cir. 2014).

integrity of his office in order to bolster the state's case. Because the prosecutor's misconduct seriously affected the fairness, integrity, and public reputation of Smith's proceedings, we reverse his conviction and remand for a new trial.

## I

The facts leading to Smith's conviction are set forth in our prior opinion.[2] We recount only facts pertinent to the procedural posture of this case and to arguments regarding prosecutorial misconduct during summation.

The Tupelo Police Department arrested Smith after discovering that someone downloaded twenty-six videos containing child pornography from FrostWire—a free peer-to-peer file sharing network—onto Smith's laptop. Only three individuals, Smith and his two roommates—his girlfriend, Elizabeth Penix and his friend, Joshua Jolly—had regular access to Smith's laptop.[3] Because employment records indicated that Penix was at work during one of the download times, she was not a viable suspect.[4]

At trial, Jolly denied having ever downloaded child pornography, but he could not recall his activities on the relevant download dates. Jolly further testified that he possessed little knowledge of computers, though forensic analysis revealed that Jolly regularly used Smith's computer to browse the Internet.[5]

Smith did not testify but called three witnesses to establish an alibi— Penix and Smith's parents, Roberta and J. W. Smith. The alibi witnesses testified that Penix and Smith were at his parents' home during one of the download times, raising an inference that Smith did not download child

---

[2] *Id.* at 845-48.
[3] *See id.* at 846.
[4] *Id.*
[5] *See id.*

No. 14-60926

pornography at any time. The testimony of Smith's alibi witnesses was impeached. However, if believed, the testimony of Smith's parents and of Penix necessarily implicated Jolly.

The jury found Smith guilty, and he timely moved for a judgment of acquittal, or in the alternative, a new trial. The district court entered a judgment of acquittal based on insufficiency of the evidence but conditionally denied Smith's new trial motion. The Government then appealed Smith's acquittal to this court, and Smith cross-appealed the denial of his new trial motion pursuant to Federal Rule of Criminal Procedure 29(d)(3)(B).[6] Viewing the evidence in the light most favorable to the verdict, we reversed the judgment of acquittal and remanded for sentencing.[7] It is the final judgment of conviction from which Smith now appeals.[8]

## II

Smith contends that in closing arguments, the prosecutor committed plain error by vouching for the credibility of witnesses and that the prosecutor improperly argued to the jury that the Government had no incentive to try Smith unless he were guilty. Smith contends this violated his due process right to a fair trial. The Government argues that because Smith did not raise these issues in the trial court or in his cross-appeal in response to the Government's prior appeal, these issues are waived. The Government asserts in the alternative that we are foreclosed from considering these issues under the law-of-the-case doctrine. These arguments are not well-taken.

---

[6] FED. R. CRIM. P. 29(d)(3)(B) ("If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.").

[7] *See Smith*, 739 F.3d at 848.

[8] *Id.*

3

No. 14-60926

## A

The Government maintains that Smith was required to raise claims of prosecutorial misconduct in the prior appeal, and Smith counters that he was not. However, neither Smith nor the Government cited authority to support their respective positions, even after they were pressed by this court to do so. But our precedent makes clear that Smith was not required to cross-appeal as to issues of prosecutorial misconduct that, if sustained, would require remand for a new trial.[9]

---

[9] *See United States v. Williams*, 679 F.2d 504, 507 (5th Cir. 1982):

In the first appellate incarnation of *U.S. v. Williams*, this defendant appeared before us in the role of appellee. As such, he was allowed only to respond to the government's arguments. If in the earlier appeal Williams had sought to raise the arguments he now brings before us, his cross-appeal would have been dismissed for want of jurisdiction; as the victor in the district court, Williams was not then an aggrieved party entitled to review. Moreover, as the defendant in a criminal action, he could not come before this court in the role of appellant until he had been sentenced. *Parr v. United States*, 351 U.S. 513, 518 (1956); *Berman v. United States*, 302 U.S. 211, 212-213 (1937). It was only after the district court's directed verdict of acquittal had been reversed, the case remanded, and a sentence had been imposed, that Williams could raise the arguments he now urges upon the court in this appeal. Since this is the first time Mr. Williams could appear before us in the role of appellant, we conclude that this case is now properly before us.

Having explained why Mr. Williams is getting two bites at the appellate apple, we now move on to the core issues in this appeal.

*See also United States v. Cardenas*, 748 F.2d 1015, 1023 (5th Cir. 1984); *but see* 15B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3919.5 (2d ed.) (footnotes omitted):

The right of the government to appeal a dismissal does not carry with it a right of cross-appeal by the defense to raise issues that would not support a judgment of acquittal. It seems to be felt that such matters as denial of a defense motion for new trial are better reviewed in conjunction with such further trial court proceedings as may be required should the government win reversal on appeal from the dismissal. This practice may be too grudging. Defense cross-appeals should be permitted as to any issues that are conveniently considered together with the dismissal question; the court need not trouble with the cross-appeal if the dismissal is affirmed, and all parties may benefit from disposition of the cross-appeal if the dismissal is reversed.

The waiver doctrine generally bars consideration of issues that a party could have raised in an earlier appeal but did not.[10]  However, Smith was not the appellant in the prior appeal.  He was the prevailing party in the trial court, obtaining a judgment in his favor.  The procedural posture of this case is similar to that of *United States v. Cardenas*.[11]  In that case, our court concluded that the evidence was sufficient to support a jury's guilty verdict and therefore that the district court's judgment of acquittal should be reversed.  We explained that on remand the defendant could raise his argument that the prosecutor had made improper comments:

> [T]he defendant currently is before the court in the role solely of an appellee.  As such, he is allowed only to respond to the government's arguments.  Cardenas will be able to raise the issue of whether the prosecutor's statements warrant a mistrial once the district court's judgment of acquittal has been reversed, the case remanded, and sentence imposed. The issue, however, is not currently before this court.[12]

Since Smith was not required to raise the issues of prosecutorial misconduct in the prior appeal taken by the Government, those issues are not waived.[13]

We note that under Federal Rule of Criminal Procedure 29(d)(3)(B), when the Government is the appellant, a defendant, as an appellee, is permitted, but not required, to assert that the trial court's conditional denial

---

The government has been allowed to cross-appeal upon appeal by the defendant, and a similar practice seems warranted on appeal by the government.

[10] *See Brooks v. United States*, 757 F.2d 734, 739 (5th Cir. 1985) ("This Court has noted that an issue not briefed and discussed in an appeal before this Court may be deemed to have been waived.  Moreover, the Supreme Court has noted that a second appeal generally brings up for revision nothing but proceedings subsequent to the mandate following the prior appeal." (citation omitted)).

[11] 748 F.2d at 1023.

[12] *Id.* (citation omitted).

[13] *See also* WRIGHT, MILLER & COOPER, *supra* note 15 at § 3919.5 n. 110.

of a motion for a new trial was erroneous.[14] At the conclusion of his trial, Smith moved for a new trial on several grounds, including a request for a new trial on the basis that if the evidence was sufficient to support the verdict, it was nevertheless so thin as to require a new trial in the interest of justice. In the prior appeal by the Government, Smith did cross-appeal under Rule 29(d)(3)(B), contending that the district court erred in conditionally denying his motion for new trial on this ground. Our court had jurisdiction of that issue and ruled adversely to Smith. But we did not reach, and did not purport to reach, issues that were not included in the motion for new trial.[15]

## B

The law-of-the-case doctrine bars reexamination of issues of law or fact decided on appeal in subsequent proceedings in a trial or appellate court.[16] It applies when an appellate court previously decided the issue "either expressly or by necessary implication."[17] The Government contends that in his motion for new trial, Smith argued that the prosecutor improperly vouched for witnesses and improperly stated that he had no incentive to try Smith if Smith were not guilty. The Government correctly observes that in the prior appeal, this court concluded that none of the grounds asserted in the motion for new trial warranted a new trial. In the prior appeal, this court said:

> Smith asks that we instruct the district court to consider whether a new trial is warranted on grounds not previously raised. Smith, however, has shown no error or abuse of discretion in the district court's adjudication of his motion for a new trial, and we find none in the record. Accordingly, we deny that request.

---

[14] *See* FED. R. CRIM. P. 29(d)(3)(B) ("If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.").

[15] *United States v. Smith*, 739 F.3d 843, 848 (5th Cir. 2014).

[16] *See Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061-62 (5th Cir. 1981).

[17] *Id.* at 1062 (quoting *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 663 (5th Cir. 1974)).

No. 14-60926

Consequently, and for the reasons stated herein, we REVERSE the judgment of acquittal and remand for sentencing.[18]

Our court considered only the grounds that Smith set forth in his motion for new trial. We have reviewed the record, and the motion for new trial did not raise any question as to the prosecutor's vouching for witnesses or the prosecutor's statement that he would not have prosecuted Smith unless he was guilty. Our court had no occasion to consider those issues, and we did not decide them expressly or by necessary implication.

### III

Because Smith did not object to the prosecutorial remarks at issue in the present appeal, we apply plain error review.[19] Smith must demonstrate "(1) there is error; (2) it is plain; and (3) it affected his substantial rights."[20] If Smith meets that burden, we have discretion to remedy the error, though we ordinarily do not reverse unless the error "seriously affected the fairness, integrity, or public reputation of the judicial proceeding."[21]

### A

Smith contends that several remarks made by the prosecutor in his summation improperly vouched for the credibility of testimony favorable to the Government's case. These include:

> (1) Ms. Penix testified that it was not her. She is against child pornography. I'm totally convinced that that's truthful.

> (2) Mr. Jolly listened carefully to the questions and testified truthfully to what happened.

> (3) I'll try and suggest to you a number of reasons why I believe that he [Jolly] is worthy of believing.

> (4) Unequivocally, truthfully, and corroborated by Ms. Penix.

---

[18] *Smith*, 739 F.3d at 848.

[19] *United States v. Gracia*, 522 F.3d 597, 599-600 (5th Cir. 2008).

[20] *Id.* at 600.

[21] *Id.*

(5) You've got to decide.  And I think as you look at [Mr. Jolly's] testimony, you can understand that when he testified he didn't know anything about peer-to-peer networks and FrostWire, that he's telling the truth.

While a prosecutor may argue inferences and conclusions drawn from the evidence, he "may not make explicit personal assurances of a witness's veracity."[22]  Our concern is with the "great potential for jury persuasion which arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity."[23]  We have repeatedly admonished that a prosecutor "may not state, 'The prosecution's witnesses are telling the truth' or 'I believe that the prosecution's witnesses are telling the truth.'"[24]

We have no difficulty in concluding that the first, second, third, and fourth remarks quoted above constitute impermissible vouching.  Improper bolstering statements are "easily recognized" and include "personal expressions such as 'I think,' 'I know,' 'I believe,' or other expressions that either explicitly or implicitly convey the prosecutor's personal impressions."[25]  The prosecutor's remarks here that "I'm totally convinced that that's truthful" and "I believe that [Jolly] is worthy of believing" are quintessential vouching statements.  The prosecutor's repeated declarations that Jolly testified "truthfully," while slightly less glaring, were also improper.

The fifth remark quoted above is a closer call.  A prosecutor may argue permissible conclusions drawn from the evidence, but the context of this remark and its proximity to improper statements is troubling.  But a

---

[22] *United States v. Leslie*, 759 F.2d 366, 378 (5th Cir. 1985) (citing *United States v. Lamerson*, 457 F.2d 371, 372 (5th Cir. 1972) (per curiam); *Gradsky v. United States*, 373 F.2d 706, 709 (5th Cir. 1967)).

[23] *Hall v. United States*, 419 F.2d 582, 583 (5th Cir. 1969).

[24] *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978) (citations omitted).

[25] *United States v. Delgado*, 672 F.3d 320, 336-37 (5th Cir. 2012) (en banc) (quoting BENNET L. GERSHMAN, PROSECUTORIAL MISCONDUCT § 11:24 (2d ed. 2010)).

No. 14-60926

determination as to its propriety is unnecessary to our holding.

## B

The prosecutor contrasted the Government's motive to prosecute Smith with the motives of Smith's alibi witnesses. Specifically, the prosecutor asked rhetorically, "[w]hat incentive is there for us to come in and try a person if he's not the person that did the offense? What incentive is there, on the other hand, to hold [the defendant's alibi] until the last possible minute and bring it in uninspected?" The prosecutor essentially offered the integrity of the prosecutor, i.e. Government, as a reason to disbelieve Smith's alibi witnesses.

The Government does not attempt to defend this statement; nor can it. The prosecutor's commentary here falls well within the umbrella of similar remarks we have previously held to be error.[26] In *United States v. Lamerson*, for example, the prosecutor erred when he stated that he would not be prosecuting the defendant "had [he] not committed a crime."[27] Similarly, in *United States v. Garza*, reversal was warranted when the prosecutor argued "those people (the government agents) and the Government has (sic) no interest whatsoever in convicting the wrong person," thereby implying that the prosecution would not have commenced unless the defendant was guilty.[28] As in *Lamerson* and *Garza*, the prosecutor here effectively stated "that the Government prosecutes only the guilty."[29]

"This particularly egregious form of argument has . . . been considered and condemned by this Court."[30] In *Hall v. United States*, we explained the danger inherent in such argument:

---

[26] *See e.g., Lamerson*, 457 F.2d at 372; *United States v. Garza*, 608 F.2d 659, 664-65 (5th Cir. 1979); *Hall*, 419 F.2d at 587.

[27] *Lamerson*, 457 F.2d at 372 (alteration in original).

[28] *Garza*, 608 F.2d at 664-65 (alteration in original).

[29] *Lamerson*, 457 F.2d at 372.

[30] *Garza*, 608 F.2d at 665.

No. 14-60926

In considering the impact of what is said the court also must be concerned with the great potential for jury persuasion which arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.[31]

The prosecutor's remark here pits the integrity of the Government against Smith's alibi witnesses and states that the Government had no incentive to prosecute Smith unless he were in fact guilty. This was impermissible.

**C**

In arguing that the prosecutor's errors were not plain, i.e. "clear and obvious,"[32] the Government, in its brief and at oral argument, quoted the prosecutor's closing argument extensively in an attempt to place the challenged remarks in context. We have reviewed the entire argument and conclude that the context does not transform the remarks from impermissible argument to mere attempts to "point out evidence" of Smith's guilt, as the Government claims. First, many of the challenged statements are clear error on their face and cannot be mitigated by context.

Second, to the extent that the context could alter the effect of an isolated remark, we must also consider the prejudicial effect of the remarks taken together. In *United States v. Gracia*, we acknowledged that while "occurrences of prosecutorial misconduct *ordinarily* must be viewed individually," the

---

[31] *Hall*, 419 F.2d at 583-84; *see also Garza*, 608 F.2d at 665 ("This entire line of argument presumed that the whole government apparatus, and the prosecutor individually, had reached a determination of the defendant's guilt before the trial and implied that the jury should give weight to this fact in making its determination.").

[32] *United States v. Gracia*, 522 F.3d 597, 602 (5th Cir. 2008).

context there—"near-simultaneous, similar attempts to bolster" government witnesses—required us to weigh the statements *in pari materiae*.[33] The prosecutor's remarks here were similar to those in *Gracia*—substantively related, made "within minutes of each other," and "neither isolated nor limited, but . . . cumulative components of a single diatribe."[34]

The prosecutor's statements constitute plain error.

## D

Reversal is not warranted, however, unless the prosecutor's misconduct affected Smith's substantial rights. "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict."[35] "We generally look to three factors in deciding whether any misconduct casts serious doubt on the verdict: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction."[36]

We credit the district court's general cautionary instruction advising the jury that "any statement, objection, or argument by the attorneys are not evidence" and "it is your own recollection and interpretation of the evidence that controls . . . ." "We presume that such instructions are followed unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect of the improper statement is devastating."[37] Nevertheless, the generic instruction given prior

---

[33] *Id.* at 603 (emphasis in original).

[34] *Id.*

[35] *Id.* (quoting *United States v. Holmes,* 406 F.3d 337, 356 (5th Cir. 2005)).

[36] *United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007) (quoting *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005)).

[37] *Gracia*, 522 F.3d at 604 (quoting *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999)).

to the prosecutor's summation does not persuade us that the jury was unaffected by the prosecutor's misconduct. We have repeatedly observed, in like circumstances, that the damage resulting from such statements is difficult to undo—"[o]therwise stated, one 'cannot unring a bell.'"[38]

The evidence supporting the guilty verdict, though factually sufficient, was not overwhelming. It is notable that at the conclusion of the trial, the district court granted Smith's motion for judgment of acquittal based on insufficiency of the evidence, though our court reversed.[39] When we reinstated Smith's conviction, we did so on the premise that "it is the sole province of the jury to assess the credibility of the testimony given at trial, and we must consider all evidence in the light most favorable to the guilty verdict rendered."[40]

The Government's case depended on the jury believing Jolly and disbelieving Smith's alibi witnesses. Our opinion in the prior appeal noted the credibility issue that was crucial to Smith's conviction—"the jurors in this case simply chose to believe Jolly instead of [Smith's] girlfriend and [Smith's] parents," despite the fact that Jolly "had no explanation whatsoever" for his whereabouts when the videos were downloaded.[41] The prosecutor's persistent misconduct, aimed directly at witness credibility and that of the Government, draws the jury's verdict into doubt.

Though the bar for reversal is a high one,[42] it is met here. A prosecutor's role "is not that it shall win a case, but that justice shall be done."[43] Because

---

[38] *United States v. Garza*, 608 F.2d 659, 666 (5th Cir. 1979) (quoting *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962)).

[39] *See United States v. Smith*, 739 F.3d 843, 845 (5th Cir. 2014).

[40] *Id.* at 846.

[41] *Id.* at 845-47.

[42] *United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007).

[43] *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009) (quoting *Dickson v. Quarterman*, 462 F.3d 470, 479 (5th Cir. 2006)).

No. 14-60926

the prosecutor's misconduct substantially affected the fairness, integrity, and public reputation of Smith's proceedings, a new trial is warranted.

## IV

Smith also asserts that the prosecutor impermissibly recounted his own experiences during summation. The prosecutor compared Jolly's "admirable" job as a welder and drafter to the prosecutor's ineptitude with such tasks. "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."[44] While reference to Jolly's skill set is relevant to Jolly's computer aptitude, the prosecutor's skills are not. Nor was the prosecutor's experience a part of the record. The prosecutor was close to the line of improper summation argument. However, because a determination here does not affect our holding, we do not resolve whether he crossed that line.

\*    \*    \*

We VACATE Smith's conviction and REMAND to the district court for a new trial.

---

[44] *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009).

13